**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **LILIANA ROSAS, #27323-078** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO.  4:20cv406** |
| | § | **CRIMINAL ACTION NO. 4:17cr140(2)** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Movant Liliana Rosas, with the assistance of counsel, filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, asserting violations concerning her Eastern District of Texas, Sherman Division conviction. The motion was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

**I.  BACKGROUND**

On December 13, 2017, a federal grand jury returned a three-count First Superseding Indictment against Movant and five co-defendants. Crim. ECF (Dkt. #96). Count One charged Movant with conspiracy to possess with the intent to manufacture and distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or 50 grams or more of methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1) and 846. Crim. ECF (Dkt. #96, pp. 1-2). Count Two charged Movant with conspiracy to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Crim. ECF (Dkt. #96, p. 2). The notice of penalty

attached to the First Superseding Indictment informed Movant that the statutory mandatory minimum term of imprisonment for Count One was ten years. Crim. ECF (Dkt. #96, p. 5).

On September 6, 2018, before a United States Magistrate Judge and alongside Counsel, Movant pled guilty to Count One of the First Superseding Indictment pursuant to a written plea agreement. Crim. ECF (Dkt. #270). The plea agreement provided in relevant part:

3. **Sentence:** The maximum penalties the Court can impose include:

a.    If 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or 50 grams or more of methamphetamine (actual) -- not less than 10 years and not more than life imprisonment, a fine not to exceed $10 million, or both; supervised release of at least five years[.]

Crim. ECF (Dkt. #272, p. 2, ¶ 3). Through the plea agreement and Factual Basis, Movant stipulated that the amount of methamphetamine involved during the term of the conspiracy was "at least 1.5 kilograms but less than 5 kilograms of a mixture or substance containing a detectable amount of methamphetamine, or at least 150 grams but less than 500 grams of methamphetamine (actual)." Crim. ECF (Dkt. #272, p. 3, ¶ 5(a)); *see also* Crim. ECF (Dkt. #274, pp. 1-2, ¶ 5) (Factual Basis).

Movant also stipulated that she had "thoroughly reviewed all legal and factual aspects of this case with defense counsel" and was "fully satisfied with defense counsel's legal representation." Crim. ECF (Dkt. #272, p. 6, ¶ 14). Further, she confirmed that she had "received satisfactory explanations from defense counsel concerning each paragraph of this plea agreement, each of the defendant's rights affected thereby, and the alternatives to entering a guilty plea." Crim. ECF (Dkt. #272, p. 6, ¶ 14). Movant attested that, after conferring with Counsel, she conceded guilt and concluded that it was in her best interest to plead guilty rather than proceeding to trial. Crim. ECF (Dkt. #272, p. 6, ¶ 14). Finally, Movant represented that she had "read or had read to

[her] this plea agreement and ha[d] carefully reviewed every part of it with [her] attorney" and that she "fully underst[ood] it and voluntarily agree[d] to it." Crim. ECF (Dkt. #272, p. 7).

At the change of plea hearing, the magistrate judge thoroughly reviewed with Movant the plea agreement and circumstances surrounding her guilty plea. Movant confirmed that she had discussed with Counsel "all of the facts of [her] case and any defenses that [she had]" to Count One of the First Superseding Indictment. Crim. ECF (Dkt. #389, pp. 10-11). Movant also confirmed that she was fully satisfied with Counsel's representation and advice, as well as her decision to plead guilty. Crim. ECF (Dkt. #389, p. 11). Movant avowed that she understood the statutory mandatory minimum sentence was ten years and that she had no questions about "the range of penalties and consequences." Crim. ECF (Dkt. #389, pp. 13-15). Both Counsel and Movant confirmed that Counsel discussed with Movant how the Sentencing Guidelines "might be used or applied" in Movant's case. Crim. ECF (Dkt. #389, p. 15). The magistrate judge also ensured that Movant understood the Guidelines were not mandatory, but discretionary; that the district judge "could depart from the Guidelines and could sentence [her] up to the statutory maximum"; that that the guideline range for her case could not be determined until after completion of the Presentence Report; and that any sentencing estimate that Counsel, the government, "or anybody" had given her was just that—"an estimate." Crim. ECF (Dkt. #389, p. 16).

Turning to the plea agreement, the magistrate judge ensured that Movant had discussed "each and every one of the paragraphs" of the plea agreement with Counsel before Movant signed it and that Movant was "comfortable" that she "understood everything" in it. Crim. ECF (Dkt. #389, p. 17). The magistrate judge specifically asked Movant whether she understood that if the sentence she ultimately received was "more severe than what [she] [was] expecting" or "hoping

3

to get," she was "still going to remain bound by this plea," and Movant responded, "Yes." Crim. ECF (Dkt. #389, p. 20). After reviewing the parts of the plea agreement concerning guideline stipulations, Movant's waiver of her appellate rights, and the plea's effect on Movant's immigration status, the magistrate judge confirmed that Movant had specifically discussed those provisions with Counsel and that Movant was pleading guilty free from "other promises or assurances . . . [made] to induce [her] to enter a plea here today." Crim. ECF (Dkt. #389, pp. 20-22). Movant confirmed that she had no "questions whatsoever" about the plea agreement. Crim. ECF (Dkt. #389, p. 22). Movant agreed that she "voluntarily, of [her] own free will, agree[d] to each of these provisions[.]" Crim. ECF (Dkt. #389, p. 22).

The magistrate judge also reviewed the Factual Basis signed by Movant. Crim. ECF (Dkt. #389, pp. 23-27). Movant confirmed that she talked with Counsel "about each and every one of the paragraphs" in the Factual Basis; that she was "comfortable and understood everything" in the document before she signed it; and that everything in the document was "true and correct," including that she "knew that the amount involved during the term of the conspiracy involved at least 1.5 kilograms but less than 5 kilograms of a mixture or substance containing a detectable amount of methamphetamine, or at least 150 grams but less than 500 grams of methamphetamine (actual[])." Crim. ECF (Dkt. #389, pp. 24-26). Consequently, the magistrate judge determined that Movant's guilty plea was "knowingly and voluntarily given, and that there is a factual basis to support it." Crim. ECF (Dkt. #389, p. 29).

The magistrate judge entered Findings of Fact and Recommendation on Guilty Plea, finding that Movant, after consultation with her attorney, knowingly, freely, and voluntarily consented to the administration of the guilty plea by a magistrate judge subject to final approval and imposition of sentence by the District Court; that Movant verified that she understood the

terms of the plea agreement; that Movant was fully competent and capable of entering an informed plea; that Movant was aware of the nature of the charges and the consequences of the plea; that the plea of guilty was made freely, knowingly, and voluntarily and did not result from force, threats, or promises (other than the promises set forth in the plea agreement); and that the plea of guilty was supported by an independent factual basis establishing each of the essential elements of the offense. Crim. ECF (Dkt. #275). On September 7, 2018, the United States District Judge adopted the magistrate judge's recommendation, accepted Movant's plea, and adjudged her guilty on Count One of the First Superseding Indictment. Crim. ECF (Dkt. #279).

The final Presentence Report ("PSR") determined that Movant's base offense level was 32 pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(4) because the offense involved 1.5 kilograms but less than 5 kilograms of methamphetamine or 150 grams but less than 500 grams of methamphetamine (actual). Crim. ECF (Dkt. #343, p. 7, ¶ 16). The base offense was reduced two levels pursuant to U.S.S.G. § 2D1.1(a)(5)(A)(i) because Movant was a minor participant. Crim. ECF (Dkt. #343, p. 7, ¶ 16). The base offense level was decreased by another two levels pursuant to U.S.S.G. § 3B1.2(b) based on Movant's minor role in the conspiracy. Crim. ECF (Dkt. #343, p. 7, ¶ 20). With a three-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, Movant's total offense level was 25. Crim. ECF (Dkt. #343, p. 8, ¶¶ 24-26). With an offense level of 25 and a criminal history category of I, the advisory guideline range was 57 to 71 months' imprisonment; however, because the statutory minimum sentence of ten years was greater than the maximum of the applicable guideline range, the guideline sentence became 120 months' imprisonment. Crim. ECF (Dkt. #343, p. 11, ¶ 51). The PSR specifically provided that Movant was not eligible for the "safety valve" adjustment under U.S.S.G. § 2D1.1(b)(17) because she had not "debriefed or truthfully provided to the Government all information and evidence [she] ha[d]

concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." Crim. ECF (Dkt. #343, p. 7, ¶ 18). Neither party objected to the PSR. Crim. ECF (Dkt. #343, p. 14).

The day before the sentencing hearing, Movant's Counsel filed a sentencing memorandum requesting the court sentence Movant to less than the statutory mandatory minimum sentence. Crim. ECF (Dkt. #357). At the sentencing hearing on January 18, 2019, the court confirmed that there were no objections to the PSR and adopted it. Crim. ECF (Dkt. #388, p. 4). The government confirmed that Movant was given the opportunity to cooperate, and although she provided information, she did not "truthfully provide all the information in relation to her conduct." Crim. ECF (Dkt. #388, p. 6). The government volunteered that the agent was available to testify if needed. Crim. ECF (Dkt. #388, p. 6). Acknowledging that it was the "opinion of the government" that Movant had been untruthful and that "there's nothing we can do to change that," Counsel nonetheless asked the court to sentence Movant to less than the statutory mandatory minimum because it was "within [the court's] discretion." Crim. ECF (Dkt. #388, p. 7). The court explained that, because of the mandatory minimum, it was not within its discretion to sentence Movant below that minimum, and because the court was not present when Movant was debriefed by the government's agent, the court would rely on the PSR. Crim. ECF (Dkt. #388, pp.7-8). Thus, the court determined it could not sentence Movant to less than the statutory mandatory minimum. Crim. ECF (Dkt. #388, p. 8). The court gave Movant's Counsel the opportunity to present testimony from the government's case agent regarding Movant's cooperation and the "safety valve issue." Crim. ECF (Dkt. #388, p. 14). After speaking privately to Movant, Counsel declined the court's offer. Crim. ECF (Dkt. #388, p. 14).

The court sentenced Movant to 120 months' imprisonment followed by a five-year term of supervised release. Crim. ECF (Dkt. #388, p. 9; Dkt. #370). Movant filed a notice of appeal, Crim. ECF (Dkt. #382), and on October 21, 2019, the Fifth Circuit Court of Appeals dismissed her appeal as frivolous under *Anders v. California*, 386 U.S. 738 (1967), and *United States v. Flores*, 632 F.3d 229 (5th Cir. 2011). *See United States v. Rosas*, 777 F. App'x 784 (5th Cir. 2019).

Movant, with the assistance of counsel, timely filed timely the instant § 2255 motion. (Dkt. #1). Movant asserts that she is entitled to relief based on ineffective assistance of counsel. In support of the motion, Movant's counsel filed a memorandum (Dkt. #1-1), a declaration from Movant (Dkt. #1-2), and a declaration from an attorney, J. Joseph Mongaras, Jr. (Dkt. #1-3). The government filed a response (Dkt. #4), asserting Movant's claims are without merit. Movant's counsel filed a supplemental memorandum in support of the § 2255 motion, discussing additional case law regarding the safety valve reduction.[1] (Dkt. #6).

## II.  STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). In a § 2255 proceeding, a movant may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (citations omitted). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations,

---

[1] Movant filed a *pro se* "Response and Objections to Government's Response to Plaintiff's Section § 2255 Motion." (Dkt. #8). The court will not consider this filing because Movant is represented by counsel. *See Lee v. Alabama*, 406 F.2d 466, 469 (5th Cir. 1968) (holding a habeas petitioner has "a right to represent himself or to be represented by counsel, but he has no right to a 'hybrid representation' partly by himself and partly by counsel").

which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). The role of § 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). "Section 2255 does not reach errors of constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Id.* Similarly, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant asserts she is entitled to relief based on ineffective assistance of counsel. A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700. A movant who seeks to overturn her conviction on the grounds of ineffective assistance of counsel must prove her entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at

690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697. When a movant pleads guilty, as in this case, she must also show that, but for trial counsel's alleged deficient performance, she would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985). Furthermore, in non-capital cases, to establish prejudice, the movant must show there is a reasonable probability that absent counsel's errors, the movant would have received a lesser sentence than he did. *Glover v. United States*, 531 U.S. 198, 199 (2001); *see also United States v. Gammas*, 376 F.3d 433, 438 (5th Cir. 2004).

With the foregoing principles in mind, the court will turn to Movant's specific allegations of ineffective assistance of counsel.

A.     **Failure to Advise Movant Regarding Statutory Mandatory Minimum Sentence**

Movant first asserts that Counsel was ineffective because she failed to advise Movant of the statutory mandatory minimum sentence and "how it was affected by the lack of the safety valve application." (Dkt. #1, p. 4). Specifically, Movant alleges that Counsel failed to advise Movant that the district court lacked the authority, "absent specific circumstances," to impose a sentence below the mandatory minimum, and instead "consistently advised" Movant that, based on Counsel's experience, Movant "would get a sentence lower than the mandatory minimum." (Dkt. #1, p. 4). Movant thus concludes that Counsel "exhibited a gross misunderstanding of the nature

of the applicable mandatory minimum sentence" and "a complete lack of understanding of longstanding precedent, of statutory and Guideline requirements." (Dkt. #1, p. 4). The crux of Movant's claim is her belief that Counsel did not understand that the court did not have discretion to impose a sentence below the statutory mandatory minimum if Movant failed to truthfully provide information and evidence to the government. The record does not support Movant's claim.

The safety valve provision permits a district court to disregard the statutory mandatory minimum sentence under certain drug statutes, including § 846, if the defendant satisfies five requirements. 18 U.S.C. § 3553(f)(1)-(5); *see also* U.S.S.G. § 5C1.2. The only requirement at issue here is the fifth: whether Movant provided "all information and evidence [she had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). *See United States v. Lima-Rivero*, 971 F.3d 518, 521 (5th Cir. 2020).

Even though Counsel argued at sentencing that the court, in its discretion, could impose a sentence between 57 and 71 months' imprisonment—below the statutory mandatory minimum— the record demonstrates that, before Movant pled guilty, Counsel advised Movant about the statutory mandatory minimum sentence and that the court could impose a lesser sentence *only if* Movant cooperated. Indeed, Movant's declaration confirms this understanding:

> 2.    My previous lawyer, Linda Guadarrama [Counsel], told me several times during the course of her representation that ***if I cooperated with the government, my sentence would be somewhere around five years, based on her experience***. She told me this at the beginning of my case and several times after that, including prior to my guilty plea hearing.

> 3.    I understand that the magistrate judge who took my guilty plea asked me questions about my understanding of the minimum and maximum penalties. At the time, I felt that I had no choice but to answer yes to these questions. At the time, I also believed what ***Ms. Guadarrama had told me about cooperating with the government and getting a sentence of somewhere around five years***.

10

(Dkt. #1-2 p. 1) (emphasis added). Cooperation necessarily implies that Movant would be truthful in her debriefing with the government. Thus, the record reflects that Counsel understood and correctly advised Movant that the court could not impose a sentence lower than the mandatory minimum unless Movant truthfully cooperated.

Contrary to Movant's argument, the fact that Counsel declined to question the government's case agent at the sentencing hearing does not demonstrate that Counsel was "wholly unaware of long-settled precedent" regarding the safety valve provision. (Dkt. #1-1, p. 10). Because Movant admittedly lied to the case agent, the case agent's testimony likely would not have been favorable to Movant. Indeed, Movant acknowledges in her declaration that Counsel advised against questioning the case agent because he "might say bad things about [Movant]." (Dkt. #1-2, p. 2, ¶ 5). As such, Counsel's decision not to question the case agent was a reasonable strategic decision and not evidence that she misunderstood the safety valve provision.

Moreover, regardless of whether Counsel knew of, or discussed with Movant, the safety valve and the effect of not being truthful during the debriefing process, given Movant's sworn statements at her plea hearing, which are entitled to the presumption of truthfulness, *see Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998), Movant has not shown that she was unaware that she could be sentenced to more than ten years' imprisonment. For example, at Movant's plea hearing, she acknowledged, under oath, that the penalty for Count One was a minimum of ten years and a maximum term of life imprisonment. In addition, Movant stated that no representations or promises had been made (other than the terms of the plea agreement) and that any sentencing "estimate" was only that—an estimate; that only the district judge would determine her sentence after receiving and reviewing the PSR; that the district judge could sentence her up to the statutory maximum of life imprisonment; and that she

could not withdraw her plea if her sentence was more severe than she expected, as long as it was within the statutory maximum. Similarly, the written plea agreement stated the minimum and maximum penalties for the offense to which Movant was pleading guilty; that her sentence would be imposed in accord with the Sentencing Guidelines; that the court could impose any sentence within the statutory maximum; that the sentence to be imposed was solely within the discretion of the district judge; and that imposition of a sentence within the statutory maximum would not be grounds to withdraw her plea. As such, even if Movant's counsel had erroneously represented that she would receive a sentence of five years by entering into the plea agreement, Movant, nonetheless, was aware when she entered the plea agreement and at the time of her plea hearing, that her sentencing exposure was a mandatory minimum sentence of ten years and could be life imprisonment. Accordingly, the ineffective assistance of counsel claim set forth in Ground One is without merit and should be denied.

**B.**    **Failure to Discuss the Safety Valve Requirements**

Movant next asserts that Counsel was ineffective because she failed to advise Movant regarding the safety valve requirements. Specifically, Movant alleges that throughout Counsel's representation of Movant, Counsel "repeatedly advised" Movant that based on her experience, Movant would receive a sentence "of about five years" if Movant "debriefed with the government," but "did not clearly discuss the requirements of the safety valve" with Movant, even after the PSR was disclosed showing she did not meet those requirements. (Dkt. #1, p. 5).

As set forth above, Movant acknowledges in her declaration that Counsel informed her that she would be required to *cooperate*—and not just debrief—with the government in order to receive a sentence below the statutory mandatory minimum under the safety valve. (Dkt. #1-2 p. 1, ¶¶ 2-

3). Movant's declaration also indicates that she understood she had to *truthfully cooperate* to receive the safety valve reduction, and that she had not done so. (Dkt. #1-2 pp. 1-2, ¶4).

Movant also argues that Counsel was ineffective because she did not "do anything to determine whether [Movant] could try to meet the [safety valve requirements]" after the initial PSR was disclosed. (Dkt. #1, p. 5). In light of Movant's failure to truthfully provide to the government's case agent all information and evidence Movant knew concerning the offense, and because the government was not obligated to meet again with Movant, *see United States v. Chambers*, 460 F. App'x 342, 344 (5th Cir. 2012), any decision by Counsel not to request a second meeting with the case agent was reasonable. That a different attorney may have requested a second meeting (*see* Dkt. #1-3, p. 3, ¶ 10) does not establish that Counsel's performance fell below an objective standard of reasonableness for not doing so. Indeed, an attorney is not constitutionally deficient simply because another attorney would have taken a different approach. *Strickland*, 466 U.S. at 689 ("Even the best criminal defense attorneys would not defend a particular client in the same way."). Furthermore, courts must eliminate the distorting effects of hindsight, and must not assume deficient performance out of disagreement with trial counsel's strategy. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) ("We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices."). Movant's ineffective assistance of counsel claim set forth in Ground Two is without merit and should be denied.

### C.    Failure to Object to Lack of Safety Valve Reduction

Movant argues that Counsel was ineffective for failing to object to the lack of a safety valve reduction in the PSR and to develop the record on this point. Movant again asserts that Counsel failed to discuss the lack of a safety valve reduction with Movant and failed to present Movant a second time to the government in an effort to earn the safety valve reduction during the ten weeks

between the initial disclosure of the PSR and the sentencing hearing.  (Dkt. #1, p. 7; Dkt. #1-1, pp. 12-13).

In her declaration, Movant admits that Counsel did discuss the lack of a safety valve reduction in the PSR and explained that the PSR did not recommend a safety valve reduction because she had lied to the government case agent:

> 4.  I do not believe I received the presentence report (PSR) in my case until three days before my sentencing hearing, when Ms. Guadarrama spoke with me about it. When we were discussing the PSR, I asked Ms. Guadarrama about the safety valve and she responded that I had lied to the agents investigating the case. I told Ms. Guadarrama that I had made a mistake and wanted to speak with the agents again.
>
> . . . .
>
> 7.  If Ms. Guadarrama had arranged a second proffer with the government, I would have answered all questions truthfully.

(Dkt. #1-1, pp. 1-2). In these statements Movant admits she had lied, as evidence by her desire to have a second meeting so that she could answer questions truthfully. Because Movant, by her own admission, did not meet the requirements for a safety valve reduction due to her failure to truthfully provide all information to the government's case agent, Counsel was not ineffective for not objecting to the PSR's determination that Movant was not entitled to a safety valve reduction. Counsel cannot have been ineffective for failing to lodge meritless objections. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Movant also complains that Counsel was ineffective because she did not present Movant "a second time to [meet with] government officials in an effort to earn the safety valve during the ten weeks between the initial disclosure of the [PSR] and the sentencing hearing." (Dkt. #1-1, p. 12).  However, as previously stated, although the government might have given Movant a second chance to cooperate, it was not obligated to do so. *See Chambers*, 460 F. App'x at 344. Because

14

the government was not required to give Movant a second chance, Movant cannot demonstrate she was prejudiced by the alleged failure of Counsel to arrange a second meeting.

Furthermore, Counsel's decision not to question the government's case agent at the sentencing hearing does not support Movant's allegation that Counsel "guaranteed that no record was made on this issue," and "without any record, [Movant] could not effectively appeal the denial of a safety valve reduction. (Dkt. #1-1, p. 13 (citing Dkt. #1-3, p. 4, ¶ 17)). Movant cannot demonstrate prejudice from Counsel's decision not to question the case agent and make a record of the issue for appeal. First, pursuant to the plea agreement, Movant waived her right to appeal her sentence unless it exceeded the statutory maximum. (Dkt. #272, p. 5, ¶ 11). Because Movant's sentence did not exceed the statutory maximum—life imprisonment—Movant could not appeal her sentence pursuant to the plea waiver, including the lack of a safety valve reduction. Second, any appeal regarding the lack of a safety valve reduction would have been without merit. Movant did not truthfully cooperate with the case agent; thus, she was not entitled to a safety valve reduction. And, as previously mentioned, questioning the case agent likely would have resulted in testimony unfavorable to Movant, and thus, Counsel's decision not to question the case agent was reasonable strategy. Movant is not entitled to relief on her ineffective assistance of counsel claim set forth in Ground Three, and the claim should be denied.

**D.**     **Failure to Ensure Movant's Guilty Plea was Knowing and Voluntary**

Last, Movant contends that Counsel rendered ineffective assistance by failing to ensure Movant's guilty plea was knowing and voluntary. Specifically, Movant argues:

> During her representation of [Movant], trial counsel advised her to plead guilty. Trial counsel represented to [Movant] that evidence existed regarding [Movant's] participation in the offense charged, yet trial counsel did not review the evidence with [Movant]. During each instance in which [Movant] and trial counsel discussed the potential penalties for the offense, trial counsel informed [Movant] that she would not be subject to the mandatory minimum sentence if she provided

information about her participation to the government. [Movant] relied on these representations when she pleaded guilty. By failing to advise [Movant] of the mandatory nature of the mandatory minimum penalty – and apparently failing to understand it herself – trial counsel failed to ensure that [Movant's] guilty plea was a knowing and voluntary one.

(Dkt. #1, p. 8).

If a defendant understands the nature of the charges against her and the consequences of her plea, yet voluntarily chooses to plead guilty, the plea must be upheld on federal review. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994); *Diaz v. Martin*, 718 F.2d 1372, 1376-77 (5th Cir. 1983).

The court understands the crux of Movant's argument to be that she understood, from Counsel, that she was only facing five years and would not have pled guilty had she known she was actually facing ten years. However, what transpired in open court during her plea hearing undercuts Movant's current claim. As previously discussed, Movant explained to the court that she was satisfied with her representation by Counsel. Movant told the court that she read the plea agreement or had it read to her, that she discussed the plea agreement with Counsel, understood the terms of her plea agreement, and agreed with the terms of that agreement. Part of that written plea agreement reads as follows:

3. **Sentence:** The maximum penalties the Court can impose include:

a.    If 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine or 50 grams or more of methamphetamine (actual) -- not less than 10 years and not more than life imprisonment, a fine not to exceed $10 million, or both; supervised release of at least five years[.]

Crim. ECF (Dkt. #272, p. 2, ¶ 3). The government advised Movant of such at her plea hearing, telling her specifically that she was facing a mandatory minimum sentence of ten years imprisonment, and when the court asked if she understood the penalties she faced, she replied,

16

"Yes." Crim. ECF (Dkt. #389, p. 14). When asked by the court if she understood that any sentencing estimate that Counsel, the government, "or anybody" had given her was just that—"an estimate," she responded in the affirmative. Crim. ECF (Dkt. #389, p. 16). Thus, the record demonstrates that Movant understood that nobody—including Counsel—could accurately predict what her sentence would be. When directly asked if anyone had made any promises to her to get her to plead guilty in this case, Movant replied in the negative. Crim. ECF (Dkt. #389, p. 22). This would include any promises made by Counsel as to what sentence she would receive. With respect to Movant's allegation that Counsel did not review the evidence of her case with her, Movant stipulated in the plea agreement that she had "thoroughly reviewed all legal and factual aspects of this case with defense counsel." Crim. ECF (Dkt. #272, p. 6, ¶ 14).

Movant's belated claim that her plea was somehow involuntary and unknowing because Counsel did not advise her of the consequences of her plea (namely, that she was subject to a mandatory minimum sentence of ten years if she did not truthfully cooperate with the government's case agent) or review the evidence with her is contradicted by the record. Movant's sworn statements in open court are entitled to a strong presumption of truthfulness. *Cervantes*, 132 F.3d at 1110 ("Solemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding." (quoting *Blackledge*, 431 U.S. at 73-74)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

Movant's sworn statements at the plea hearing show that she fully understood the rights she was giving up under the plea agreement, and that no one was forcing her to plead guilty. *See Wilkes*, 20 F.3d at 653. They also clearly show that she was aware that the mandatory minimum sentence was ten years, the exact sentence she received. Her statements were also clear that no

other promises had been made, which would include no promise had been made that she would receive the safety valve if she pled guilty. The transcript at her sentencing hearing shows that Movant had the opportunity to receive the safety valve but since she did not debrief truthfully, she was not eligible for the safety valve.

Additionally, Movant is permitted to proceed on her claim that Counsel promised her a sentence of five years only under narrow circumstances, not present here. *See Cervantes*, 132 F.3d at 1110. Specifically, a defendant may seek habeas relief on the basis of alleged promises, even though inconsistent with her representations in open court, by proving: (1) the exact terms of the alleged promise; (2) exactly when, where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise. *Id.* A defendant is entitled to an evidentiary hearing on the issue if she can produce evidence showing the merit of her allegations, typically in the form of an affidavit from a reliable third party. *Id.* Movant has not alleged any facts about the identity of any witnesses to the alleged promise by Counsel and has not provided any evidence showing the merit of her allegations. Thus, she would be unable to obtain relief under the *Cervantes* exception. *See Taylor*, 2014 WL 12650643, at *5.

In short, Movant cannot overcome her testimony at the plea hearing, which clearly established a knowing and voluntary plea, to now show that she would have insisted on going to trial but for Counsel's performance. Thus, Movant cannot prove the prejudice prong of the *Strickland* inquiry, and it is unnecessary to determine whether her Counsel's performance was deficient. Her claim that she received ineffective assistance and that her guilty plea was unknowing or involuntary fail in light of her own sworn statements to the contrary, and her claim set forth in Ground Four should be denied.

## IV.  HEARING

Movant also requests an evidentiary hearing. Evidentiary hearings, however, are not required in federal habeas corpus proceedings. *See Rule 8, Rules Governing § 2255 Cases in the United States District Courts*; *see also McCoy v. Lynaugh*, 874 F.2d 954, 966-67 (5th Cir. 1989). Quite the contrary, "to receive a federal evidentiary hearing, a petitioner must allege facts that, if proved, would entitle him to relief." *Wilson v. Butler*, 825 F.2d 879, 880 (5th Cir. 1987), *cert. denied*, 484 U.S. 1079 (1988). "This requirement avoids wasting federal judicial resources on the trial of frivolous habeas corpus claims." *Id.* In this case, Movant fails to show that she is entitled to an evidentiary hearing. *See United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing). As was determined above, Movant's guilty plea was knowing and voluntary, and she fails to meet her burden in showing that her plea was due to ineffective assistance of counsel, that Counsel rendered deficient performance with respect to the safety valve, or that absent Counsel's errors, Movant's sentence would have been different. Accordingly, she is not entitled to a hearing.  *See id.*

## V.  CONCLUSION

The court concludes that Movant's guilty plea was knowing and voluntary. Movant fails to show that Counsel rendered deficient performance or that there is a reasonable probability that, but for Counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. Finally, Movant fails to show she is entitled to a hearing. For these reasons, the § 2255 motion should be denied.

## VI.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, the Court will address whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

In this case, it is respectfully recommended reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented

are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended the court find Movant is not entitled to a certificate of appealability.

## VII. RECOMMENDATION

It is recommended the above-styled motion for relief under 28 U.S.C. § 2255 be denied and this case be dismissed with prejudice. It is further recommended a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**IT IS SO ORDERED**.

**SIGNED this 4th day of September, 2023.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE